# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 18-05015-01-CR-SW-MDH |
| EVERETT K. DAVIS, | ) ) | |
| Defendant. | ) ) | |

## REPORT & RECOMMENDATION

Before the Court is the Motion to Suppress Evidence (doc. 41) filed by Defendant Everett K. Davis. This action has been referred to the undersigned for the purpose of submitting a report on any pretrial motions to suppress evidence. As follows, it is **RECOMMENDED** that the Motion to Suppress Evidence be **DENIED**.

### I. Background

Defendant has been charged by Indictment in three counts regarding events occurring on or about March 13, 2018, as follows: Count 1, possession with intent to distribute a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); Count 2, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and, Count 3, possession of a firearm by a convicted felon and drug user in violation of 18 U.S.C. §§ 922(g)(1) and (3) and 924(a)(2). (Doc. 2.) Defendant moves to suppress:

> any evidence in this case, and any statements in this case, obtained by law enforcement officers as a result of the March 13, 2018 detention, seizure, arrest, and search of Defendant by the Barry County Sheriff's Office and Ozark Drug Enforcement Team (ODET), said search and seizure having occurred in rural Barry County, Missouri, near Highway MM and Farm Road 1057.

(Doc. 41 at 1.) According to Defendant:

> the detention, search and seizure, and arrest of [Defendant] was unlawful and in violation of his Fourth Amendment rights under the United States Constitution in that the same was pretextual in nature and was not based upon objectively reasonable articulable suspicion of criminal activity to detain nor upon probable cause to search or arrest.

*Id*.

An evidentiary hearing was conducted on July 23, 2019. (Doc. 51.) The Government was represented by Jessica Keller, and Defendant appeared in person with his attorney, Brian Risley. During the hearing, defense counsel further explained the grounds for the motion, stating that "we're arguing [] there was not sufficient probable cause for them to stop" and "the basis of our motion to suppress is based on the initial stop. Once he stopped him and then my client said no and resisted, I mean, at that point I'm not objecting to the actions of the officer [] on what he did." (Doc. 53 at 27.) Joseph Houdyshell and Taylor Lombard testified as witnesses for the Government at the hearing.

## II. Findings of Fact[1]

Joseph Houdyshell is a narcotics detective for the Ozarks Drug Enforcement Team. On March 13, 2018, Detective Houdyshell and his partner, Detective Noland Murray, were conducting stationary surveillance of the house of Carl Lincoln, located on Farm Road 1057 and Farm Road 2200 in Barry County, Missouri. The detectives were doing so based on information received from multiple informants, controlled buys, and a search warrant that Lincoln and Defendant were selling narcotics and in possession of firearms at Lincoln's house.

Earlier that day, the detectives had spoken with a neighbor to the southeast of Lincoln's house. The neighbor gave the detectives permission to sit on her property. The neighbor also

---

[1] The facts set forth are taken from the testimony adduced at the suppression hearing and Deputy Lombard's body camera video. See Transcript (doc. 53) and Gov't Ex. 1.

complained to the detectives that individuals from Lincoln's house were repeatedly trespassing on her property by crossing her fields where there were crops.

While conducting surveillance, the detectives saw Defendant leave Lincoln's house, walk to the intersection of 1057 and 2200, then walk behind some hay bales on private property, where he urinated. The detectives then watched Defendant walk across the center of the 50- to 60-acre field where the neighbor had complained about persons trespassing. About halfway across the neighbor's field, Defendant dropped a green bag he was carrying. When Defendant bent over to pick up the bag then stood up, Det. Houdyshell observed him adjusting a gun in his waistband. Det. Houdyshell was aware at the time that Defendant had prior felony convictions. Defendant then continued to the other side of the neighbor's field, where a vehicle picked him up, travelled a short distance, then stopped. Defendant exited the vehicle and walked down 1057 towards Highway MM.

At this point, Det. Murray called Taylor Lombard, who was working as a Deputy for the Barry County Sheriff's Office.[2] Dep. Lombard was on standby in the area, in case the detectives needed a uniformed officer's assistance. Det. Murray told Dep. Lombard that they had witnessed Defendant trespassing on another person's property and that he may have a firearm, and asked Dep. Lombard to approach Defendant. As requested, Dep. Lombard contacted Defendant, who was standing next to a tree at the intersection of MM and 1057. Dep. Lombard knew at the time that Defendant was a convicted felon based on prior law-enforcement contacts with him. Upon making contact, Dep. Lombard informed Defendant he had been seen trespassing, to which Defendant replied he had to pee and had just stopped there for a second. Next, Dep. Lombard asked Defendant for identification, but Defendant said he did not have any. Dep. Lombard then

---

[2] On the date of the suppression hearing, Taylor Lombard was employed as a police officer for the Cassville Police Department. (Doc. 53 at 21.)

3

asked Defendant if he had anything illegal on him, to which Defendant replied he didn't. Dep. Lombard asked for permission to check, Defendant refused, and Dep. Lombard told him he was going to pat him down for weapons. Defendant replied "Fuck dude, no man," and began walking away. Dep. Lombard then grabbed Defendant and placed him against the patrol car. At this point, Defendant stated he had a gun on him, which Dep. Lombard eventually found in his jacket. Once Defendant was fully restrained, a full search of his person and the aforementioned green bag uncovered methamphetamine and drug paraphernalia.

### III. Conclusions of Law

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. *See* U.S. Const. amend. IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found as a result of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011). Defendant argues the officers lacked a legitimate basis to stop him. Contrary to Defendant's contention, however, the uncontroverted evidence shows the officers had both probable cause to arrest Defendant and reasonable suspicion to stop him.

#### A. Probable cause to arrest Defendant for trespassing

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person … in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

The criminal offense on which the arrest is based may be a misdemeanor or infraction. *See United States v. Perdoma*, 621 F.3d 745, 749 (8th Cir. 2010); *see also* MO. REV. STAT. § 544.216 (a law enforcement officer "may arrest on view, and without a warrant, any person the officer sees violating or who such officer has reasonable grounds to believe has violated any ordinance or law of this state, including a misdemeanor or infraction").

In Missouri, a person commits the infraction of trespass in the second degree "if he or she enters unlawfully upon real property of another." MO. REV. STAT. § 569.150. Unlike trespass in the first degree, which "requires the state to prove that the defendant acted knowingly," trespass in the second degree is "an offense of absolute liability" and requires no proof that the defendant knew he was trespassing. *Id.* (comment to 1973 proposed code).

Prior to setting up surveillance of Lincoln's house, the detectives spoke with a neighboring property owner who complained that individuals from Lincoln's house were trespassing on her property repeatedly by crossing her fields of crops. Shortly thereafter, the detectives observed Defendant walk onto this neighbor's property and urinate behind some hay bales. Defendant then continued across the center of the 50- to 60-acre field where the neighbor had complained about persons trespassing. When Defendant was stopped and informed about the trespass, he stated he was there to urinate and had only stopped for a second.

Based on these facts, it is clear that the detectives reasonably believed that Defendant had committed the criminal offense of trespassing in the second degree. They had observed Defendant enter the neighbor's land, urinate behind some hay bales, and walk across her crop field. Only moments before, the neighbor had advised the detectives that she did not want individuals walking across her fields. Upon questioning, Defendant gave no indication that his entry upon the neighbor's property was lawful.

As a result, the undersigned concludes that the officers had probable cause to approach Defendant to arrest him for the infraction of trespassing in the second degree.[3]

### B. Reasonable suspicion that Defendant was involved in criminal activity

An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). "Reasonable suspicion must be based on 'specific and articulable facts[,]' consider[ed] in the [] totality of the circumstances and also [] in light of the significance that a law enforcement officer experienced in detecting criminal activity would attach to them." *United States v. Turpin*, 920 F.2d 1377, 1385 (8th Cir. 1990) (*citing Terry* 392 U.S. at 21). To conduct an investigatory stop, "an officer may rely on information provided by other officers as well as any information known to the team of officers conducting the investigation." *United States v. Thomas*, 249 F.3d 725, 728 (8th Cir. 2001).

Here, Dep. Lombard initiated an investigatory stop when he approached Defendant, informed him he had been observed trespassing, and began questioning him. Shortly before Dep. Lombard stopped Defendant, Det. Houdyshell had watched Defendant enter without permission on the neighbor's property and also observed what he believed to be a gun in Defendant's waistband. Det, Murray advised Dep. Lombard of these facts and requested he make contact with Defendant. At the time, both Det. Houdyshell and Dep. Lombard were aware that Defendant was a convicted felon, making it illegal for him to possess a firearm. In light of these specific and uncontroverted facts, it is clear that the officers reasonably suspected that

---

[3] Although specifically not challenged by Defendant, because the arrest was lawful, the officers were then authorized to search Defendant incident to the arrest.

criminal activity was afoot, and therefore were justified in stopping Defendant to further investigate the offenses of trespassing and illegal firearm possession.[4]

## IV. Recommendation

Based on the foregoing, it is **RECOMMENDED** that the Motion to Suppress Evidence be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: September 10, 2019

---

[4] Because Defendant has specifically limited his challenge to the basis for the stop and/or arrest only, and stated he is not challenging the lawfulness of any search of his person after he was stopped, the undersigned need not address the propriety of the pat-down of Defendant for weapons.