IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:18-CR-05015-01-MDH |
| EVERETT K. DAVIS, | ) |
| Defendant. | ) |

## ORDER

Before the Court is the Report and Recommendation of the Magistrate Judge. (Doc. 54). The Magistrate Judge has recommended the Court deny Defendant Everett K. Davis's Motion to Suppress. (Doc. 41). Davis did not file exceptions to the Report, and it is ripe for review. For the reasons stated below, the Court will adopt the Report and Recommendation in its entirety and consequently deny Davis's Motion to Suppress.

**Findings of Fact**

The Court has carefully reviewed the entire record in this case, including the transcript of the suppressing hearing and Deputy Lombard's body camera. The Court concurs with the factual findings made by the Magistrate Judge in his Report and Recommendation and hereby adopts those findings for the limited purpose of ruling on Davis's Motion to Suppress. Those findings are as follows:

> Joseph Houdyshell is a narcotics detective for the Ozarks Drug Enforcement Team. On March 13, 2018, Detective Houdyshell and his partner, Detective Noland Murray, were conducting stationary surveillance of the house of Carl Lincoln, located on Farm Road 1057 and Farm Road 2200 in Barry County, Missouri. The detectives were doing so based on information received from multiple informants, controlled buys, and a search warrant that Lincoln and Defendant were selling narcotics and in possession of firearms at Lincoln's house. Earlier that day, the detectives had spoken with a neighbor to the southeast of Lincoln's

1

house. The neighbor gave the detectives permission to sit on her property. The neighbor also complained to the detectives that individuals from Lincoln's house were repeatedly trespassing on her property by crossing her fields where there were crops.

While conducting surveillance, the detectives saw Defendant leave Lincoln's house, walk to the intersection of 1057 and 2200, then walk behind some hay bales on private property, where he urinated. The detectives then watched Defendant walk across the center of the 50- to 60-acre field where the neighbor had complained about persons trespassing. About halfway across the neighbor's field, Defendant dropped a green bag he was carrying. When Defendant bent over to pick up the bag then stood up, Det. Houdyshell observed him adjusting a gun in his waistband. Det. Houdyshell was aware at the time that Defendant had prior felony convictions. Defendant then continued to the other side of the neighbor's field, where a vehicle picked him up, travelled a short distance, then stopped. Defendant exited the vehicle and walked down 1057 towards Highway MM.

At this point, Det. Murray called Taylor Lombard, who was working as a Deputy for the Barry County Sheriff's Office.[2] Dep. Lombard was on standby in the area, in case the detectives needed a uniformed officer's assistance. Det. Murray told Dep. Lombard that they had witnessed Defendant trespassing on another person's property and that he may have a firearm, and asked Dep. Lombard to approach Defendant. As requested, Dep. Lombard contacted Defendant, who was standing next to a tree at the intersection of MM and 1057. Dep. Lombard knew at the time that Defendant was a convicted felon based on prior law-enforcement contacts with him. Upon making contact, Dep. Lombard informed Defendant he had been seen trespassing, to which Defendant replied he had to pee and had just stopped there for a second. Next, Dep. Lombard asked Defendant for identification, but Defendant said he did not have any. Dep. Lombard then asked Defendant if he had anything illegal on him, to which Defendant replied he didn't. Dep. Lombard asked for permission to check, Defendant refused, and Dep. Lombard told him he was going to pat him down for weapons. Defendant replied "Fuck dude, no man," and began walking away. Dep. Lombard then grabbed Defendant and placed him against the patrol car. At this point, Defendant stated he had a gun on him, which Dep. Lombard eventually found in his jacket. Once Defendant was fully restrained, a full search of his person and the aforementioned green bag uncovered methamphetamine and drug paraphernalia.

(Doc. 54 at 2-4).

### Findings of Law

Davis moves to suppress all evidence deriving from his detention on March 13, 2018, arguing that his detention was unlawful and that any evidence procured as a result of that detention

2

must be suppressed under the fruit of the poisonous tree doctrine. See *Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963).

The Fourth Amendment guarantees the rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. *Whren v. United States*, 517 U.S. 806, 811 (1996). The Fourth Amendment is applicable to state officials through the Due Process Clause of the Fourteenth Amendment. *Katz v. U.S.*, 389 U.S. 347, 357 (1967). Generally, officers require probable cause to conduct a search. However, the investigatory detention to the exception to the probable cause requirement allows officers to temporarily detain persons when they have a reasonable, articulable suspicion of criminal activity for purposes of investigating a suspected crime. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The Court shall use an objective standard to evaluate whether there was a reasonable, articulable suspicion of criminal activity justifying an investigatory detention. *Id.* at 21-22. The Court shall look at the totality of the circumstances to determine whether there was a particularized and objective basis to suspect wrongdoing. *U.S. v. Jones*, 606 F.3d 964, 965-66 (8th Cir. 2010) (internal citations omitted). Additionally, "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause exists where the totality of the officer's knowledge would lead a prudent person to believe the suspect has committed a crime. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Davis contends that Detectives Houdyshell and Noland did not have a reasonable suspicion that Davis was involved in criminal activity and did not have reasonable suspicion to detain him or probable cause to arrest him. The record shows that Detectives Houdyshell and Noland had received reports from a neighbor that individuals coming from Lincoln's house had repeatedly

trespassed across her field. While surveilling Lincoln's residence, the detectives witnessed Davis "walk across the center of the . . . field where the neighbor had complained about persons trespassing." Additionally, Detective Houdyshell observed Davis adjust a gun in his waistband. Detective Houdyshell knew that David was a felon and was not allowed to possess a firearm.

The criminal offense on which the arrest is based may be a misdemeanor or minor infraction. *United States v. Perdoma*, 621 F.3d 745, 749 (8th Cir. 2010). In Missouri, a person commits the crime of trespass in the second degree "if he or she enters unlawfully upon real property of another." RSMo. § 569.150. Based on the uncontroverted record and the law, detectives Houdyshell and Noland had both a reasonable suspicion that Defendant was involved in criminal activity, justifying a *Terry* stop, and probable cause to believe he had committed the crime of trespass in the second degree, justifying his arrest. Consequently, the Court agrees with the Magistrate Judge that "the officers had probable cause to approach Defendant to arrest him for the infraction of trespassing in the second degree." The Court further agrees that the officers were reasonable to suspect "that criminal activity was afoot, and therefore were justified in stopping Defendant to further investigate the offenses of trespassing and illegal firearm possession." Once the Defendant was under arrest, the officers were authorized to search Defendant incident to that arrest. *Chimel v. California*, 395 U.S. 752 (1969).

## CONCLUSION

For the reasons stated above, the Court will not suppress the fruits of detectives Noland and Houdyshell's detention and arrest of Defendant. The Court hereby **ADOPTS** the Report and Recommendation of the magistrate Judge and **DENIES** Defendant's Motion to Suppress.

**IT IS SO ORDERED**.

DATED: November 7, 2019

                                         */s/ Douglas Harpool*
                                         **M. DOUGLAS HARPOOL**
                                         **UNITED STATES DISTRICT JUDGE**